Date of sale, 1357 from 2008. Mr. Altman, welcome back on the floor. We see you here frequently on the most challenging trade matters. Please proceed. Good morning. Thank you. In July of 2004, my client, Sango, was the unexpected recipient of good news that it was going to have its products reclassified by customs. It would enter its gas-fueled parts and accessories. And while there was a slight increase in the duty rate, there was also an increase of about 111% in the anti-dumping duty margin. So we began by asking the Department of Commerce to… Why shouldn't swivels and nuts be treated the same? Treated the same? Well, we would contend they should be treated the same as gas-fueled parts and accessories under Heading 9028. The Customs Service, Customs and Border Protection, has taken the view they should be classified under a different provision also together. At the time this proceeding was actually instituted by Mr. Shagman and others, the Customs Service classified a gas-fueled swivel under one heading and a gas-fueled nut under another,  but today we're here because of the dumping margin, which is 111%, as I recall. But we would contend there are two distinct articles of commerce. If they choose to classify them in the same heading, that doesn't make that they're not two different classes or kinds of articles, but they just happen to be classified the same. But as I understand it, you want… Like meat and bacon and bacon, they're both bacon. I'm sorry. As I understand it, you want commerce. You want these two different pieces to be each evaluated separately under various factors. They're not together as a unified, integrated part of the same item. It wasn't until Judge Barzilay, I believe in a footnote to what we refer to now as Sango 1, came up with the idea that they were to be referred to collectively. Because the two go together, he pointed out… Kind of like pipes and pipe fittings. Well, yeah, they go together. I guess name and age doesn't make them the same. But that hasn't sort of fallen on deaf ears thus far. That's why we're back. Anyway, because of the dumping situation, we… Is it critical to your prevailing that we require classification under different headings of these two charts? No, no. No, we just don't. Neither within the scope of the dumping finding has to be an iron pipe fitting. Neither one of them. Neither is. Then why are you fighting about whether they're categorized the same or separate? If neither fit, then we could win without having to win your argument that they can't be considered jointly. Well, thus far, this court's the only entity before whom we've appeared that has any appreciation of the fact that we should be entitled to treat these separately, that we should be entitled to have them outside the scope. We haven't decided that yet. No, not this court. I'm just trying to understand whether… Your Honor, the only way… This is a gas meter nut. The only way that the Department of Commerce could get it classified as a pipe fitting was to say that when it slid over a gas meter swivel and joined to the gas meter, that it became a fitting because gas meter nuts are straight threaded. Every pipe fitting is a tapered thread. So there's no way that this can thread to any pipe or pipe fitting. These are generally produced. In fact, almost every case before earlier this morning, they come in 5LT, 10LT, goes back to the old days, 5-candle, 10-candle, 45-candle. It all had to do with the size of the opening. But Commerce made a determination to treat the two together, and then it analyzed each of the K2 factors, looking at both of them together. So your argument, as I understand it, is that was a mistake because regardless of what you determine for nuts, swivels is something different. Regardless of what you determine for swivels, nuts is something different, and these five factors ought to have been applied to each one independently. We would say apply the factors to each separately as opposed to saying that you have to treat them as if they were sold. That way we might end up with a determination, for example, that swivels, there's substantial evidence to support their determination with regard to swivels but not nuts. Certainly it seems to me that… Possibly, yes, Your Honor. You have stronger arguments for the nuts, right? Correct. There's no threading. They don't fit to a pipe, even on one end, even arguably. Well, you can see that if you fit it to a pipe, you wouldn't do much. The pipe would still be going, but you couldn't then do anything with this. But we've got to… Don't we have to review this for substantial evidence? Substantial evidence. We contend there's no substantial evidence as to the nut. We contend there's no substantial evidence in the swivel. Right, but what about the notion that the two ought to be treated together? And in particular, I guess I'm wondering what we ought to do about Commerce's determination that it should be treated the same, that they're sold together. They are not sold together. For example, if you went into an outlet that would sell gas meter swivels and nuts, and it's not Lowe's, it's not Home Depot, but if you could find them and said, I'd like to get a swivel and a nut, they would first ask you, well, what size gas meter do you have? And let's say you say a 5LT, 5K. Because the nut has to meet to the meter, the swivel has to meet to the pipes. And the nut not only has to meet to the meter, it has to meet to a specific meter. A spray nut will not fit a Pittsburgh meter. So we have this specific difference here. And when you get them all together, it's impossible to walk in and say, I want to buy this unit. I can buy a cross, a T, a union. I can buy all kinds of malleable iron pipe fittings. They're sold by that name. Can I have you look at page 1402 of the appendix? 1402 of the appendix. And by the way, throughout the appendix, one of the things that's kind of troubling, I don't know if this is supposed to be redacted. I don't think so, given there's no confidential nomenclature. So I'm assuming that all these dark marks all over the pages that make it really hard for us to understand what's on these pages have to do with highlighting, maybe? They have to do with the fact that a clerk erroneously marked them on the right side when I had told them to mark them in the middle. And I hope perhaps you don't look at it, but that's the reason it's... No, okay. Well, so on page 1402... Yes, ma'am. You have something in a picture there on the left that says swivel set. Okay, and I assume this was part of the record alone, correct? That's correct. Was the rest of this, which I understand this to be the ectometer catalog, was the rest of this catalog also part of the record? I cannot... It's not in the appendix? I cannot tell, Your Honor. I assume it was because we didn't have access to anything that was this one page. But let's assume, and I was taking my hand out, so I assume that you do have this in the page. That's from the current website. Oh. So we don't know that this is what it looked like in 2005. We don't know that this current website printout is what existed. All we have is what we were given in the appendix. Well, if you will recall, the appendices in the two cases that actually come before this court have probably been about five to six inches thick. All kinds of catalogs. We merely tried to show that manual iron pipe fittings are advertised and provided in separate catalogs from gas meter accessories. Here's a perfect example. These things are all gas meter accessories. There's not a pipe fitting in the pictures anywhere. So we have perhaps used it for one reason, and if you have questions about it, I will assume, yes, that both pages or maybe more. I have very seldomly seen a two-page catalog. So the scribble set there, the picture on the left, indicates that it's possible to buy these things as a set. I don't know, Your Honor. I just don't know. Because, first of all, I thought you argued that you just didn't, you earlier told me that they don't sell these things as sets because you need to get your particular nut and you need to get your particular scribble. Because it seems to me it matters that it's always sold together in the same package as a set, that maybe commerce has some substantial evidence to suggest they ought to be treated the same way. I would put that, Your Honor, in the next page provided to us, which is page 13. I note there's a page 12 on ours, so I'm going to assume, Your Honor, that in 2000, whatever it was, it's still current. You will note that they are by part number, and you don't buy anything on this page as a set. Now, whoever— What about at the end where it says galvanized swivel set part number on the right? Perhaps then, yes, Your Honor. That's the first I've been really focused on. I guess this is the way this particular company markets it. What we're trying to find out here is if you look at what's on page 12, it shows a swivel, swivel nut, and swivel washer with a bracket saying this equals swivel set. Then if you go over to the next page, it says galvanized swivel set part number. Now, that suggests that maybe it's not the case, but it suggests that swivel set, namely a nut and a swivel, are sold together. And that would, as Judge Moore suggested, perhaps support what Congress did here. So we're just—we're kind of asking a question with respect to this document. It is entirely possible. So I notice that this is a metric meter. I am pretty confident that if you look at your gas bill from Washington Gas or wherever it's from, they don't bill you in meters. And so this particular company, Eko Meter, perhaps offers something, and they may offer it as a set. I think the exception always proves the rule. We just didn't focus on this. And in this case, Your Honor, it says it speaks for itself. This company may offer all three sets. If you look at all the other catalogs we've produced, I've never seen set as a concept. And I'm sure that either the department or Vernon Council, if it had been so important, would have pointed out my error if I'd made one. Well, we were drawn to it just because it was the follow-on page to what appears in the appendix. Yeah, well, I must commend you. At 8500-1402, you've done your homework. But in this case, yes, swivel set. It looks like it's sold as a swivel set by a part number. But I think if you look at all the other catalogs, the size of this tends to say that if you need a spray meter, you're going to get a spray knife. And if you can order it and find it in a spray catalog, then so be it. It must exist. We just didn't see it in the spray, the Pittsburgh, the other catalogs. If you look at the standards for B109, which would only apply, these are the only kinds of articles to which B109 applies. All medical arm type things, as per the department. These are the ANSI things. I don't know how you say it. It's easier to say ANSI than it is to remember what the American National Library. But this is made to a different standard from all medical arm type things. So, again, we take them as a set. You take them as individuals. They're different. And I think the opinion of the court below summarizes fully the distinctions. I'm not sure of my time. If you have three minutes for rebuttal, if you want to reserve. I will reserve. Thank you, Your Honor. Thank you. Confer. Good morning to you. Welcome to the court once again. Good morning, Your Honor. May it please the court. The judgment will actually be affirmed because the Department of Congress completely complied with this little mandate and forming a diversified products analysis to syndicate to the agency's regulations. Could you be slower and louder?  I apologize, Your Honor. And the trial court correctly refused the redetermination of that. Those are all nice conclusions, but what's your response to the arguments Mr. Huffman has just voiced? Where is he wrong? Well, first of all, there is additional evidence in the jury context that these swivels and nuts are sold as sets. If you move this court's attention to page JA 1310, there's a reference. And then again, this is the record that was amassed by Congress below. But there is a reference on that page to swivels, sets, and meter nuts. Where is that? 1310? Page 1310 of the Joint Appendix of the Congress. That would actually imply by, it seems to me, it would almost imply that swivels and meter nuts are something different from what's set. I think a fair piece from the record, Your Honor, would be that you can buy swivels and nuts perhaps separately, but they can also be purchased as sets. This doesn't even indicate, though, that these things are for sale. Like, I found this to be sort of the kind of thing that would likely jump you to something else. Where in the actual catalog do you show ever that these things are sold as sets? Well, Your Honor, the top of the page, again, this is an inference that Rita can draw, but at the top of the page it refers to products and services. If I could draw your attention to the next page on page 1311, it says, Pipe repair, meter swivel sets, and malleable iron meter nuts. Doesn't that almost imply that meter swivel sets and malleable iron meter nuts are two different things? I don't, how do I know that the nut is included in the swivel set there? And even if Congress gets substantial deference, this still doesn't even indicate that this is being sold. This is just a product catalog. I mean, I couldn't find anything in Mueller that you all cited to me or even on their website that indicate they sell swivel sets. Well, this is evidence that was placed before Commerce that would allow it. This is just a line. It says, pipe repair, meter swivel sets, and malleable iron meter nuts. From this, that is substantial evidence for Commerce to determine that a swivel and a swivel nut are sold together. Well, Congress didn't, first of all, Commerce didn't, there's not a price, there's not a product number, there's nothing here. Your Honor, Commerce did not rely exclusively on this page and determine that it would be reasonable to treat these two as together. And Commerce did make an affirmative finding that they are sold together. I think the Commerce cited a number of different factors as to why it chose to treat these two items as together, because for the reasons of this case determination, they cannot, they must, they have to function together. Before we leave the issue we're talking about about being sold together, what, if anything, is your view with respect to the material that we were discussing with Mr. Outman that was handed up to counsel before the argument, the echo meter material? Well, Your Honor, as established with Mr. Outman, the first page of that page, and there's a handout from the court, which I understand was taken off the website, is, appears, does appear in the joint appendix. Yeah, the first page. The first page. The second page does not appear in the joint appendix. Is it part of the record, do you know? Because often there's material in the record that is not in the joint appendix. Right, and it's not in the entire catalog to address the court's prior question. The entire catalog is not on the record. But frequently, as Your Honor, I know, parties make, interested parties make submissions to Commerce and agree to attach whatever material they choose to their submissions, and Commerce is a repository of that information, so what Commerce receives is what- So you don't know if this page 13 was before Commerce or not? But the second page of this, no, Your Honor, no. I guess I'm just, my trouble is finding substantial evidence for treating these two things together, the purpose of it, because they've got a much stronger case that the five factors are not met with regard to the nuts than they do with the swivel, so it seems to me that if I'm not going to go whole hog with them, that maybe I need to understand why Commerce chose to treat these two things together. Your Honor, I think there's no reason for Commerce not to treat the two items together, because the little types of pipe fittings wouldn't be treated together for purposes of disorder, right? You wouldn't tell me a pipe isn't a type of pipe fitting. No, but unions, for instance, are treated as- Sango concedes that unions, which consist of three parts together, are treated as a single unit under the order. The only distinction that Sango makes is a distinction without any basis whatsoever in the record, that Sango believes that there's a distinction between unions and gas meter nuts and swivel. We don't think that there is. Yes, but a union is always sold together. You can't actually even buy them separately. All of the evidence in the record suggests that you can only buy them together. In fact, they come preassembled together. You don't even assemble them when you receive them. They arrive already assembled as a single unitary piece. It is, in fact, possible to break them up and take them apart, but that seems to me to be wildly different from nuts and swivels, which everything I can find in the record in the case, and I certainly don't have a whole record by any stretch, which is why I'm hoping that you can bring me the things that maybe I'm missing, but everything I have in the record indicates that nuts and swivels are always sold separately, and in fact that there's a really good reason why, because you don't know what kind of nut you need until you look at your meter, and you don't know what kind of swivel you need until you look at your pipe, which means umpteen different possible combinations can exist, so it wouldn't even be very efficient or common-sensical to sell them together. So I understand that they really articulate quite a few distinctions between the unions and the swivel nut combination. First of all, there's no evidence in the record to establish the conclusion that unions are always sold together. I just want to point that out. Everything in the record establishes that they are, because they're here. I can point to the page, page 1317. Every page that you have provided us in the record indicates that they're sold together. So if they're not, maybe there's something else. All we're saying, Your Honor, is that commerce also did not make, commerce did not rely exclusively, first of all, commerce did not make a finding that they're sold together. It did not even rely on that or rely more on the functionality, the fact that they go with each other. In fact, the customs treats them under the same tariff pattern and said that they should be treated under the same tariff pattern. The fact that… What is your, and I apologize for jumping in because time is fleeting, what is your, you mentioned functionality. We've talked about whether they're sold together. We've looked at various pieces of paper, so to speak. But what in the record can you point to on the functionality that you just mentioned? Is there some kind of expert or is there some kind of a statement that would support it? Because that would be, that would certainly, I think, be relevant one way or the other. In other words, on the functionality point, what piece of evidence can we look to in the appendix that supports this? Other than a statement, say, by commerce that it's the case. Well, Your Honor, I'm sure you're well aware, there is the conclusion by commerce in the record on page 261 that the record evidence shows that gas meter nuts cannot be used without gas meter swivels and that gas meter swivels cannot be used without gas meter nuts. I'm not sure… Neither can be used without the meter itself either, right? Yes. Yes, so, but you wouldn't tell me a meter is affected. No. But the evidence that commerce was relying on, again, I don't think that there's any requirement anywhere in the statute or in the law or anywhere that requires that the items be sold together. It's more of a, commerce really said it was reasonable. Hold on a second, I'm talking about the functionality point now. What is the basis for that? What you were just, you just pointed to commerce's statement and that's based on when one looks at them? I think that, I apologize, Your Honor, I don't have specific sites, that there is, that it was relying upon the petitioner's statements, it was relying, I mean, I'm sorry, I don't have specific sites. It wasn't really a point of dispute. I don't think that Sango is denying that they cannot be, that they can function separately. I think that Sango is saying that that is not relevant consideration and that that doesn't make commerce a good company. But commerce, I guess the larger point that I'm trying to make here, Your Honor, is that commerce did not rely, commerce relied on a variety of different factors. The fact that the scope inquiries were both submitted, were submitted by Sango and by McDonald, they submitted individual scope inquiries where they were treated together. The fact that Cosme played a determining role in what they, I want to go through each of these. You're going so fast. I'm sorry. And, you know, substantial evidence really is kind of like if there's almost anything. Just a scintilla, I'm going to find your way. So I just need to find it in this paper. So the fact that, the fact that they asked for a scope order and in that scope order talked about squiggles and talked about nuts, the fact that they asked for them in a single combined scope order, is that the substantial evidence to support treating them together for purposes of the analysis? Yes. That? Is it common? I don't know the answer to all these questions. Is it common that when people ask for a scope order, if they have two separate things like here, a squiggle and a nut, that they would actually file two repetitive and separate scope orders? Because certainly when you file complaints, for example, you kind of throw everything in together, get it all taken care of at once, even though there might be multiple different claims in a complaint. You know, I really just don't know the answer. I don't know how this works for filing of these kinds of scope orders. Is it the case, do you know, I mean, is it the case that when, if you want it to be treated separately, you have to file them in two separate orders? No, Your Honor. I'm not sure there's a, I'd be dishonest to say that I knew that there was a mandatory requirement to file separate orders. That would be extreme. I think it's a reasonable, it's a standard reasonableness. In the scope approved request filed by Sango and by McDonald, did they, the way they presented their case, did they make it seem like these were fundamentally materially different items that should be treated separately, or were they making generalized arguments that would apply to them that would allow commerce to treat them together? Similarly, the customs made a similar rule. You mean, for example, like when they make the generalized argument about how these are both made to a different ANSI standard than iron pipe fittings? Right. That when they make arguments that apply to both of them, that that justifies commerce making them both standard altogether? Right, and again, it's more of a common sense thing. Yes, they may have made, because I know Mr. Altman's going to get up and say, well, we made specific arguments about the nut. But the question is, when looking at the totality of the request, is it reasonable to treat them as together? Or is it, would it be efficient? Would it be reasonable? Would it be unfair? Would it be prejudicial not to treat them together? Well, you would agree, wouldn't you, that you've got a much stronger case on the swivel. The swivel actually on one end, arguably, amounts to a pipe, whereas the nut never, ever amounts to a pipe. Your Honor, I mean, my first response, of course, is that I'm not the agency, so for me, commerce does not determine them individually, so I'm not going to speculate as to what they would do. I would agree commonsensically that, standing here, yes, there would be much stronger arguments that we would have for including the swivel alone as under the order than the nut. But I do not, I mean, I would purport to prejudge what commerce would do. I do not agree that it is readily apparent that the nut could not fall under the order, too, only because we reject it for the reasons that the commerce has stated in its determination, and as the trial court explained in her very well-reasoned decision below, that we reject most of these arguments. A fitting does not need to direct, a pipe fitting need not, I'm sorry, a fitting need not attach directly to the pipe on both ends. That is just, I mean, that's a stronger argument than Sango is making. So we could, the nut doesn't have to attach either way. But the nut doesn't attach, I might agree with you there, but the nut doesn't attach on either end. Well, it can attach to another fitting. I mean, one can make the argument that it can attach to another fitting and that that might fall under the order. This is all speculation. But the principle argument is perfectly reasonable to treat them together, and Sango has identified no substantial evidence saying it's not. So the reasonableness, okay, is the fact that you say they function together, that they apply for in a single scope order request. And also that customs agrees that customs looked at the items and giving customs a ruling and determined that they fall within the same tariff. And customs itself, let me get my hand on this quickly, because I realize I'm over, and I appreciate the court's indulgence. Customs itself made a determination, don't plenty of things fall within the same tariff that aren't necessarily the same thing for these purposes? I mean, isn't the customs determination for a whole different purpose, I guess, is what I'm getting at. Now, the customs, you're right. The customs is not purporting to decide the scope question. It's obviously within Congress's social discretion. And also, as we've noted for customs, the tariff determinations are not dispositive on the scope inquiries. Actually, this is not as responsive as I thought, but on page 145, customs, in considering these, considering the tariff classifications made a note on page 145 of the Joint Appendix that gas-fueled squiggles are considered to be pipe fillings by this industry. Again, a reasonable determination that suggests that the way Congress handled this was supported by substantial evidence. I've gone way over my head. Mr. Shagan, I hope to have more time now. Thank you. Thank you. Mr. Shagan. May it please the Court, let me begin by saying that Appellant started by arguing that his client was simply bringing these meter swivels in nuts as parts of gas meters until all of a sudden customs said, gotcha, these really should be classified not only as malleable pipe fittings, but subject to the malleable pipe fittings order. And that occurred sometime in 2002. And before that, nobody knew anything about this. But as part of the record is we have been arguing to the agency since the very beginning that customs service as early as 1991 in response, and this is at the appendix at page 141 and 142, in a request specifically from counsel to an importer bringing in meter swivels and nuts together from three countries and said, where should they be classified? Customs says meter swivels and nuts should be classified together as malleable pipe fittings. Customs has since reiterated that on two different occasions. So it's not as if all of a sudden. For tariff purposes. For tariff purposes. That's different. And then just to follow up on your question, Judge Moore, as to tariff classification doesn't always denote scope. In this case, as in some other cases, the scope here does in fact is coterminous with the tariff classification. So the scope here is very broad. It's all malleable pipe fittings. And then the scope says malleable pipe fittings are in these specific HDSs. Now the scope then said there's some malleable pipe fittings in these HDSs, which are specifically excluded, roof fittings and compression fittings. But in this case, if you're a malleable pipe fitting, in an HDS is a malleable pipe fitting, then you're in the scope. Now why is that? Because all of these malleable pipe fittings do the same things, which is why there is substantial evidence to support the commerce determination. They have the same physical characteristics. They're not dissimilar between a union and the meter swivel and nut. They're parts of gas systems. They don't always attach to pipes. Sometimes, as here, you might attach another fitting, and then you might attach to a boiler or another apparatus. And by the way, that's specifically in the head notes to the HDS for the pipe fittings, that pipe fittings don't need to attach to pipes, but that pipe fittings can attach to other apparatus. And that's the way the scope was defined. In fact, the scope largely followed the HDS headings in terms of defining the scope of the products. So there's plenty of substantial evidence to support the commerce determination. We have common physical characteristics. We have common uses in terms of building gas systems. Sometimes you're attaching to a gas meter. Sometimes you're attaching to a boiler or to a gas range, but you're all part of the piping system. You have similar methods of distribution at the wholesale level. You have the common perceptions in the industry and by users. You would have a Baltimore Gas & Electric going to a pipe valves and fittings distributors and buying gas meters and swivels to go with the gas meters they're installing at the home, but buying a union or another type of fitting to go when BG&E hooks up the gas boiler at my home. So these are all similar products. And as you stated earlier, all the department needs to find that these products together, which is, and by the way, I think actually the original request for a scope ruling did in fact by Sango and A.Y. McDonald say, we want a scope ruling on gas meter swivels and nuts. So the perception by using the and, the conjuncta, that they would be used together, which was common in the industry that meter swivels and nuts went together. We had these customs rulings saying we're treating them together. I don't think that this court could find that the department err by making a common sense reading that they seem to have been treated together. They seem to often, maybe not always, but often be sold together. They seem to be manufactured together. Where's the evidence that they're sold together? Oh, all of the, everything in the record that the court is pointing to, including what you passed out before, is that swivels and nuts are always in the same catalogs. I would point to- They're in the same catalogs. Correct. That doesn't mean they're sold together. There's a whole lot of different car parts in the car catalogs. When I say that they're sold together, they may not always come in and buy. I would presume that you're not going to, if you're installing a new gas meter, you're not going to buy just the nut for the gas meter and not buy a swivel to hook the pipe up to the nut. But if you're buying a new gas meter, you're always going to buy a swivel and a nut. That doesn't justify treating the meter as part of the set. No, you wouldn't treat the meter just as you said before. You wouldn't treat the pipe. But the fact is they're all sold in the context of being different malleable pipe fittings. The purchaser doesn't always have to buy them all together. But I think they're acknowledged by distributors, by manufacturers that- As the evidence shows, they're almost always sold together. I meant in conjunction, not always, every time purchased together. You don't find gas meter swivels on page 2 of the catalog and gas meter nuts on page 217. They're normally on the same page as they are here on this record. Just one question. What about this document that was handed up? Is that proper for us to look at? Is that part of the record? I think so. I think these normally are sets. I mean, I think the common sense are that the swivel and the nuts- Was the second page, if you know, part of the record? I do not remember it being part of the record. I think as plaintiff's counsel stated, there was a lot of catalogs put initially by all sides on this record. And I can't remember all of the hundreds of pages. I think we tried to pick out the most appropriate ones for the appendix. Thank you. Thank you, Your Honor. Your Honor, three minutes. I'd like to have five seconds before my time starts. I've been in a lot of courts, seen a lot of evidence. I have no earthly reason why I brought with me today, after one of my co-counsel, this is the complete equimeter brochure. All pictures were made in the matching color. There's a thousand digits to look at it. I looked at the swivel and the bailiff, and you may look at it. It does, in fact, run or have the two pages you pictured, plus a lot of other things. That's very helpful, Mr. Allen. So we know it was part of the record. It was part of the record, and the likelihood of my bringing it here today is remote. But anyway, you must have had something in mind. Two or three things real quickly. Every catalog that we put in here about gas meter swivels and nuts does talk about gas meter swivels and gas meter nuts. They don't talk about malleable iron-type fittings in the same catalog. App 120-121 has the Lord gas meter catalog. Mr. Shaggard's client, there are four separate blocks. One is connecting nuts. The other three are swivels. They're advertised in the same catalog, not as sets, not as units, not together, et cetera. After the scope determination, we requested a separate ruling from Customs. We did file one request for a scope determination. In private practice, it's a little hard to sell a client that you have two products. They're caught by the same thing. I'm going to have to prepare two 100-page submissions because of the fact that I'm going to refer to the same exhibits, but I'm going to have to talk about a swivel in one hand and a nut in another. I've been practicing for a little over 40 years. If I had two problems, I'd get them in one letter. I'd put them in one letter. Anyway, at Customs, the Customs Service, and I would refer you to page 7 of my reply brief, specifically referred to nuts and swivels as being two distinct articles of commerce. Now, they ultimately rule they're in the same tariff classification against my client's interest, but they're in the same ruling. Now, Your Honor, Judge Moore, quite correct. A union, three pieces, comes together. And as you can see in a single package, a union's inside. So the rest of the premise, we think there is no substantial evidence on any of the five factors as respect to nuts and as respect to gas in your service. I have 45 seconds. All right. Thank you, Your Honor. All counselors, if you feel under advised. Excuse me. All rise.